IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR - 9 2005

**CLERK, U.S. DISTRICT COURT**
By _____
Deputy

| | | |
|---|---|---|
| RICHARD K. ARCHER, M.D., INDIVIDUALLY AND AS TRUSTEE OF THE RICHARD K. ARCHER, M.D., P.A. PROFIT SHARING PLAN & TRUST, | § § § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| vs. | § § | **2 - 0 5 C V - 0 7 8 - J** |
| STEVE STERQUELL, INDIVIDUALLY AND AS TRUSTEE OF THE STEVE W. STERQUELL, PROFIT SHARING TRUST, AMERICAN HOUSING FOUNDATION, RICHARD O. HARRIS, JR., INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF RICHARD O. HARRIS, DECEASED, JOHN H. LOVELL, COLEMAN YOUNG, JOHN SMITHEE, TEMPLETON, SMITHEE, HAYES, HEINRICH & RUSSELL, L.L.P., AND LOVELL, LOVELL, NEWSOM & ISERN, L.L.P., | § § § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT - JURY DEMANDED

TO THE HONORABLE JUDGE OF SAID COURT:

Richard K. Archer, M.D., Individually and as Trustee of the Richard K. Archer, M.D., P.A.,

Profit Sharing Plan & Trust, Plaintiff, ("Archer") complains of Steve Sterquell, individually and as

Trustee of the Steve W. Sterquell Profit Sharing Trust ("Sterquell"), American Housing Foundation

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 1**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint.wpd

("AHF"), Richard O. Harris, Jr., Individually, and as Executor of the Estate of Richard O. Harris, Deceased ("Harris"), John H. Lovell ("Lovell"), Coleman Young ("Young"), John Smithee ("Smithee"), Templeton, Smithee, Hayes, Heinrich & Russell, L.L.P. ("Templeton, Smithee"), and Lovell, Lovell, Newsom & Isern, L.L.P. ("Lovell Firm"), as Defendants, and for cause of action states the following.

**Parties**

1.      Richard K. Archer, M.D.,  Individually and as Trustee of the Richard K. Archer, M.D., P.A., Profit Sharing Plan & Trust,  (hereafter "Archer" or "Plaintiff") is an individual resident of Amarillo, Randall County, Texas.

2.      Defendant Steve Sterquell, Individually and as Trustee of the Steve W. Sterquell Profit Sharing Trust, is an individual resident of Amarillo, Potter County, Texas, who may be served with process at 2415 Crockett, Amarillo, Potter County, Texas 79109.

3.      Defendant American Housing Foundation is a Texas nonprofit corporation, which may be served with process by serving its registered agent, Steve W. Sterquell, at its place of business at 1800 South Washington, Suite 311, Amarillo, Potter County, Texas 79102.

4.      Defendant John H. Lovell is an individual resident of Amarillo, Potter County, Texas, who may be served with process at his residence address located at 2311 SW 16th, Amarillo, Potter County, Texas 79101.

5.      Defendant Richard O. Harris, Jr., Individually and as Executor of Richard O. Harris, Deceased, is an individual resident of Dallas, Dallas County, Texas, who may be served with process at his residence address located at 5050 Village Place, Dallas, Texas 75248.

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 2**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

6.      Defendant Coleman Young is an individual resident of Amarillo, Potter County, Texas, who may be served with process at his residence address located at 102 Chucker St., Amarillo, Potter County, Texas 79124.

7.      Defendant John Smithee is an individual residence of Amarillo, Randall County, Texas, who may be served with process at this residence at 2808 Parker, Amarillo, Randall County, Texas 79101.

8.      Defendant Templeton, Smithee, Hayes, Heinrich & Russell, L.L.P., is a limited liability partnership organized under the laws of the State of Texas and can be served with process by serving any of its partners at the business address at 320 S. Polk, Suite 1000, Amarillo, Potter County, Texas 79101.

9.      Defendant Lovell, Lovell, Newsom & Isern, L.L.P., is a limited liability partnership organized under the laws of the State of Texas and can be served with process by serving any of its partners at the business address at 112 W. 8th, Suite 1000, Amarillo, Potter County, Texas 79101.

### Jurisdiction and Venue

10.     Jurisdiction of the claims asserted herein is based upon 42 U.S.C. §1985(2), 42 U.S.C.§1988(a), 28 U.S.C. §1331, 28 U.S.C. §157, 11 U.S.C.§362, and 28 U.S.C. §1367.

11.     Jurisdiction of the state law claims herein is based upon the doctrine of supplemental jurisdiction, as codified in 28 U.S.C. §1367.

12.     Venue is appropriate in this District and Division, pursuant to 28 U.S.C. §1391, because all Defendants reside or may be found herein, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and Division.

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 3**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

## Background Facts

13.     Richard K. Archer, M.D., was a practicing physician in the Amarillo, Texas, area for over 38 years, before retiring in 1998.   Upon retiring from the practice of medicine, Archer relied upon the Richard K. Archer, M.D., P.A., Profit Sharing Plan & Trust ("Archer Trust"), for his retirement income.

14.     Archer engaged the services of Steve W. Sterquell for accounting purposes, primarily because Sterquell represented himself as an expert on pension plan taxation, in or around 1993. Sterquell, unknown to Archer at the time, was in bankruptcy.   Sterquell rendered professional accounting and advisory services to Archer and the Archer Trust, upon which Archer justifiably relied, and Archer thereby entered into a relationship of trust and confidence in Sterquell.   During the course of such professional relationship, Sterquell obtained access to and awareness of many confidential and proprietary business dealings and tax-related matters of Archer and his pension plan, and developed an intimate knowledge of such business matters, as well as obtaining confidential information regarding Archer's children and their business matters. Sterquell further rendered advice in the structuring and reporting of various matters relating to Archer and his retirement plan. Sterquell had an obligation under law to preserve the confidentiality of all such information obtained in connection with such professional and fiduciary relationship.

15.     In early 1993, Archer entered into a partnership, known as the Airport Building Partnership, with Sterquell and Richard O. Harris ("Harris"), now deceased, in which their profit sharing trusts would be the partners, for the purpose of purchasing a building near the Amarillo airport (the "Airport Building").   In November 1993, Harris called Archer and offered to sell his interest in the Airport Building.   Richard Archer said that he did not have any interest in purchasing

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 4**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

Harris' interest. However, Richard's brother Branch overheard the conversation and expressed an interest in purchasing both Harris' and Sterquell's interest in the partnership. Harris sold his partnership interest to Branch on or about January 1994. After months of negotiations, Sterquell entered into a settlement of the partnership rights and obligations on or about July 2, 1994. The partnership then sold the airport building for a profit to the Amarillo Economic Development Corporation.

16.     Sterquell and Harris then filed a suit styled *Steve W. Sterquell, et al v. Richard K. Archer, M.D., et al*, in the 47th District Court, Randall County, Texas, Cause No. 40, 125-A, alleging various causes of action against Archer. Ultimately, such lawsuit proceeded to trial, resulting in a judgment signed November, 2000, in which the Sterquell Profit Sharing Plan was awarded a judgment of about a million dollars, about $100,000.00 each in actual damages, and $750,000.00 each in punitive damages. The actual damages were assessed against a related corporation and the Archer Trust. The punitive damages were assessed solely against Archer, individually. Such judgment was appealed to the Court of Appeals for the Seventh District, Amarillo Division, in Cause No. 07-01-0071-CV. After briefs were filed and the case was argued, the Seventh Court of Appeals rendered its decision in December 2003, granting some relief to Archer from the exemplary damages that had been awarded, and awarding judgment to Harris on his claims. A petition for review was filed with the Texas Supreme Court in Docket No. 04-0318, and review was denied by order dated February 11, 2005.

17.     Young and Smithee of the Templeton, Smithee, Hayes law firm, Sterquell's attorneys, attempted to collect on the judgment from Archer while the appeal was pending. Archer,

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 5**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint wpd

individually, did not have sufficient nonexempt assets to post a supersedeas bond while the appeal was pending. As a result, during the pendency of the appeal, Sterquell's counsel began aggressive judgment collection procedures, and obtained discovery supposedly in aid of judgment.

18.     After various attempts were undertaken to collect the judgment while the appeal was pending, Archer then filed for protection under Chapter 7 of the Federal Bankruptcy Laws to avoid further harassment, such proceeding being styled *In Re: Richard Keys Archer*, Cause No. 02-21164-RLJ-7, which was filed in the Amarillo Division of the Northern District of Texas (hereafter "the bankruptcy proceeding"). By operation of law, as a result of such bankruptcy filing, an automatic stay against proceedings to collect judgments or claims, other than through lawful proceedings in the bankruptcy court, went into effect.

19.     Various disputes arose in Archer's bankruptcy proceeding, including the filing of an objection challenging the bankruptcy exemption claimed for Archer's pension and profit sharing plan, which was by far his largest asset, and an objection to the dischargeability of Archer's liability under the state court judgment. During discovery in connection with the judgment collection process and the disputes in the bankruptcy proceeding, Archer produced approximately 10,000 pages of documents related to his business activities and the pension plan.

20.     Scheduling orders were entered by the Bankruptcy Court on these adversary matters, and trials on such matters were scheduled. The parties conducted pretrial discovery in connection with such matters, and were preparing, in early April, 2003, for the taking of depositions of witnesses in preparation for such trials. The trial on the challenges to the exemption for the profit sharing plan was pivotal to the entire proceeding, because the profit sharing plan had assets, and Sterquell's

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 6**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint.wpd

success in challenging the exemption would have yielded payment of more of the judgment, even in the bankruptcy proceedings. If the exemption had been upheld, Sterquell would have collected little if anything on the judgment in Archer's bankruptcy.

21.     Prior to the scheduled hearings on the objections to the exemption for the profit sharing plan, Jeff Voiles, one of Archer's attorneys, received a call from Sterquell's attorneys, to "schedule a meeting," ostensibly to "review the evidence they had," and to hear some "information" that Sterquell wished to convey to Archer's attorneys. Archer's attorneys agreed to schedule a meeting, believing that the purpose was to engage in good faith settlement discussions of the various disputes among the parties.

22.     Sterquell, Young, and Lovell attended the meeting with Archer's attorneys, Don Sunderland, and Jeff Voiles, on April 4, 2003. From the outset it was clear that the genuine agenda for the "meeting" was that of blackmail and extortion whereby Sterquell and his attorneys were demanding payment in excess of the judgment in "settlement" in order to prevent Archer and his family from being subjected to criminal prosecution. At that time Sterquell and his attorneys claimed that they had uncovered massive violations of the Federal pension laws and Federal income tax laws which were of a criminal nature, with potential penalties so massive that Archer and the Trust would have been financially ruined. They further alleged that the supposed crimes implicated Archer's children, including David Allison, Archer's son-in-law, as well as Archer.

23.     The message was clearly conveyed by Sterquell and his attorneys at this meeting that Sterquell was threatening, and intended to instigate criminal prosecution of alleged federal violations of law by Archer's children and their pension plans unless Archer agreed to Sterquell's demands.

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 7**
\\Emlofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

Such "negotiating tactics" were nothing more than illegal coercive tactics intended to impose horrendous pressure upon Archer to relinquish the protections afforded him under the bankruptcy laws, in clear violation of the automatic bankruptcy stay provided by 11 U.S.C. §362.

24.     Sterquell and his attorneys made it clear at this meeting that if Archer did not pay them the full amount of the judgment, waiving both his pending state court appeal and the protections of the Federal bankruptcy laws by virtue of the bankruptcy proceeding pending in the Northern District Bankruptcy Court, they would report these alleged crimes to the Internal Revenue Service, the Department of Labor, the Department of Justice, and the Bankruptcy Court, and press vigorously for prosecution, using Sterquell's supposed expertise and unique "knowledge" of the business dealings among Archer, his pension plan, and his children and their pension plans, but that if the demands were met he would not report Archer and his children and would destroy the alleged evidence.  It was made clear by the statements made by Defendants that such criminal prosecution would be initiated unless Archer waived and relinquished all of his rights to an appeal from the State Court judgment and to a hearing on the challenged exemptions in Federal Bankruptcy Court, and dismissed the bankruptcy proceeding, waiving all of his rights therein.  The threats were coercive, and designed to cause extreme duress and pressure because the alleged potential criminal and civil penalties would have utterly destroyed Archer and his children.

25.     At the time of such meeting, and at all material times thereafter, Defendants were directly aware that Archer was a party and witness in the Federal Bankruptcy Court trial scheduled, as well as Trustee of the Archer Trust, and that David Allison, Archer's son-in-law, was a witness in the Bankruptcy Court trial, and an attorney for Archer and the Archer Trust.  Further, the automatic bankruptcy stay under 11 U.S.C. §362 had not been lifted or modified with respect to any claims of Sterquell.

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 8**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

26.     Later that day, Jeff Voiles, one of Archer's attorneys, received a call from Young. He said that "Mr. Sterquell would agree to the extent permitted by law not to report Archer, his retirement plan or other entities to the Internal Revenue Service." Young further stated that Sterquell's willingness not to report to the IRS was "expressly conditioned upon payment in full of the state court judgment." Such conversation re-emphasized the threat of criminal prosecution for the purpose of intimidating parties and witnesses from attending and testifying fully and truthfully, and to extort payment of a large sum of money to avoid criminal prosecution.

27.     Shortly thereafter, Archer's counsel received a fax "settlement offer" from Lovell, a copy of which

is attached hereto as Exhibit "A." The "offer" was not a true settlement offer, but instead nothing more than a one-sided list of demands, including the requirement that Archer pay the judgment in full, pay additional money to American Housing Foundation, dismiss his other causes of action, and release any claims against Sterquell and others. Sent immediately after the meeting in which the Defendants had made extortionate demands and threats of criminal prosecution in order to collect a civil debt, and had engaged in coercive tactics in violation of the automatic bankruptcy stay, such letter demanded surrender by Archer and full payment of the demands. It was apparent that satisfaction of such demands was essential to avoid the threatened criminal prosecution.

28.     During these "settlement" discussions, it was made clear to Archer that Sterquell and the other individual Defendants herein would report Archer, and other members of his family, to every government agency they could to initiate criminal prosecutions, unless Archer paid Sterquell approximately one million dollars. Sterquell's threats were that of threatening to "ruin [Archer's] entire family." On April 15, 2003, Sterquell, Coleman, Young, and Lovell signed a "Letter of

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 9**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint.wpd

Intent," a copy of which is attached hereto as Exhibit "B." The Letter of Intent explicitly stated in part:

> In exchange for RKA's payment of mutually agreeable amount of money your clients and their representatives agree that they will not report, inform nor otherwise transmit information concerning alleged violations of any law of the United States by, RKA or any of the Archer Entities to the U.S. Department of Justice, the Internal Revenue Service, the U.S. Department of the Treasury, the U.S. Department of Labor...

29. A "comprehensive settlement agreement" was prepared, which did not include this key element of the proposed deal. The comprehensive settlement agreement did include an agreement to follow the terms of the Letter of Intent which contained a promise not to report Archer or of the members of his family to the criminal authorities in exchange for payment of money.

30. During the course of such blackmail and extortion, thinly disguised as "settlement negotiations," American Housing Foundation was a participant, through Sterquell and was one of the intended beneficiaries of the illegal demands made by the other Defendants.

31. Rather than give in to such blackmail and illegally coercive tactics, and because he did not believe that he had committed any criminal acts, Archer instead began the process of self-reporting to the Federal authorities. After a series of meetings with appropriate law enforcement officials, and after disclosing necessary information to Federal authorities, Archer was informed that the authorities had no interest whatsoever in prosecuting him or his family for any alleged violations of law. When the time came for execution of the "comprehensive settlement agreement," Archer refused to sign, and the "agreement" was never consummated.

32. Because of the concerns over the threat to his children, Archer borrowed the funds necessary to post a supersedeas bond, and caused his bankruptcy proceeding to be voluntarily dismissed.

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 10**
\\Emilofe\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

33.     All of these acts of blackmail and illegal coercive tactics on the part of Defendants occurred after the appeal to the Amarillo Court of Appeals had been briefed and was awaiting decision, and while the automatic bankruptcy stay was in full force and effect.

34.     During these meetings, telephone calls, and alleged "settlement negotiations," the named Defendants acted in concert and in combination, one with the other, and acted pursuant to a conspiracy among themselves and others yet to be determined for the purpose of extorting payment of a sum of approximately one million dollars ($1,000,000.00) from Archer and compelling Archer, through intimidation, force, threats, coercion, and blackmail, to relinquish his rights in the bankruptcy proceedings.  Each of the Defendants, and others yet to be named, committed one or more overt acts in furtherance of the conspiracy, as alleged herein, with knowledge of the purpose and intent of the conspiracy and for the purpose of effectuating the purposes thereof.  During the course of such conspiracy, Defendants sought either to attain an illegal purpose through use of legal means, or in the alternative, to obtain a legal purpose through the use of illegal means.

35.     At all material times, John H. Lovell was acting both individually and on behalf of Lovell, Lovell, Newsom, and Isern, L.L.P., and Coleman Young and John Smithee were acting both individually and on behalf of Templeton, Smithee, Hayes, Heinrich & Russell, L.L.P.

36.     At all material times, Sterquell and Harris were acting jointly, and American Housing Foundation was a willing participant in the scheme alleged herein, pursuant to an agreement to divide the proceeds of their lawsuit against Archer.

37.     As a result of the accusations of criminal wrongdoing and threats of criminal prosecution, Archer suffered severe and ongoing mental anguish and emotional distress.  As a result of such mental anguish and emotional distress, he experienced extensive physical symptoms,

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 11**
\\Emlofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint.wpd

including but not limited to low self esteem, suicidal thoughts, loss of interest in usually pleasurable activities, changes in appetite, apathy, excessive ongoing worry and tension, unrealistic view of problems, restlessness, irritability, muscle tension, headaches, sweating, difficulty concentrating, nausea, tiredness, sleep disorders, and fatigue.

38.     Furthermore, responding to and dealing with these illegal attempts at blackmail and extortion caused Archer to expend extremely substantial amounts of additional otherwise unnecessary attorneys' fees and out of pocket expenses to investigate the allegations and prepare to deal with the same. The resulting dismissal of the bankruptcy proceeding and loss of his ability to claim exemptions for his pension plan, but instead being forced to borrow funds to supersede the judgment, plus interest on the borrowed funds, have caused Archer substantial and devastating financial losses, in his business and property, all in excess of $1,000,000.00.

## COUNT I

### Violation of Civil Rights guaranteed pursuant to 42 U.S.C. §1985(2)

39.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 38 above, as if the same were fully set forth herein.

40.     This is a claim for conspiracy in violation of 42 U.S.C.§1985(2).

41.     As set forth above, Defendants, and each of them conspired to deter Archer, as both a party and witness, and his family members, his attorneys, witnesses to be called on Archer's behalf, in connection with the hearings scheduled to be heard in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division, from attending such Court, or from testifying to any matter pending therein fully, freely, and truthfully.

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 12**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

42.     As the direct and intended result of the threats made by the Defendants, the hearings in bankruptcy court were cancelled, and ultimately the bankruptcy proceedings were dismissed in their entirety, and as a result none of the witnesses on Archer's behalf were allowed to testify fully, freely, and truthfully, and Archer was prevented from attending such court proceeding. Archer had a constitutionally protected property interest and right to pursue full and complete relief in his bankruptcy proceedings to the extent provided by law, including applicable provisions of the United States Bankruptcy Code, and was deprived of such property interest and of his rights to substantive and procedural due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution in connection with such hearing and the bankruptcy proceedings by the conspiracy of the Defendants.

43.     Specifically, Archer was damaged in his business and property and was rendered completely unable to present an effective case in the scheduled hearings in the United States Bankruptcy Court because he was put between a rock and a hard place: either relinquish valuable rights under law and pay $1,000,000 to Defendants, or face threatened criminal prosecution of himself and his family in retaliation for his exercise of his rights under the United States Bankruptcy laws. Defendants thus sought to coerce Archer into relinquishing all protections of the Federal Bankruptcy laws in order to protect his children from criminal prosecution, who were not liable under the state court judgment nor parties in the bankruptcy proceedings.

44.     As the direct and proximate result of such illegal conspiracy and such threats and intimidation, Plaintiff has been injured in his business and property in an amount exceeding one million dollars ($1,000,000.00), and has suffered additional consequential damages, for which he demands recovery from all Defendants, jointly and severally.

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 13**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

45.     Furthermore, pursuant to 42 U.S.C.§1988, Plaintiff seeks recovery of his reasonable and necessary attorneys' fees, costs, and expert fees for prosecuting this action, including all such fees and expenses incurred for proceedings in the District Court, the Court of Appeals, and the Supreme Court, to be assessed jointly and severally against all Defendants.

46.     Since such actions on the part of Defendants were conducted wilfully, maliciously, and intentionally, and with wanton disregard to Plaintiff's rights, Plaintiff further demands recovery of exemplary damages of and from all Defendants, jointly and severally, to the maximum extent provided by applicable law, subject to applicable limitations and standards provided by law, in an amount to be assessed by the factfinder.

## COUNT II

### Violation of Automatic Bankruptcy Stay pursuant to 11 U.S.C.§362

47.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 46 above, as if the same were fully set forth herein.

48.     This is a cause of action for violation of the automatic bankruptcy stay pursuant to 11 U.S.C.§362.

49.     During the course of Archer's bankruptcy proceedings, the automatic stay provided by 11 U.S.C.§362 of the United States Bankruptcy Code was in effect, and the provisions of such stay were not lifted or modified for the benefit of Defendants.  All Defendants were actually and constructively aware of the provisions of 11 U.S.C.§362, and were charged with compliance with such statute.

50.     By utilizing threats of criminal prosecution in the context of supposedly negotiating a "settlement" of the state court appeal and the bankruptcy court proceedings, and by threatening

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 14**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

criminal prosecution of Archer's children, who were neither parties nor liable under any theory of law for the state court judgment, Defendants engaged in improper and illegal attempts to collect, assess, or recover a debt by using illegal coercive negotiating tactics, in violation of the Bankruptcy Code's automatic stay.

51.     During the course of their coercive negotiating tactics, the Defendants expressly threatened criminal prosecution, and expressly threatened to cause criminal prosecution of both Archer and numerous members of his family, for alleged violations of various federal criminal laws. Thus, even if Archer prevailed on the exemption claimed for his profit sharing plan, and the other matters in dispute in his bankruptcy proceedings, he would face the certainty of attempts by Defendants to institute criminal prosecution of him and his family and, if he lost the hearing, he would lose the benefits of the bankruptcy laws and the exemption for his profit sharing and retirement plan. This meant that Defendants were treating his personal liberty, and the liberty of his family, as "collateral" for the unsecured debt which Defendants were seeking to claim, a debt arising from a state court judgment which was still not a final judgment.

52.     As the direct and proximate result of such illegal conspiracy and such threats and intimidation, Plaintiff has been injured in his business and property in an amount exceeding one million dollars ($1,000,000.00), and has suffered additional consequential damages, for which he demands recovery from all Defendants, jointly and severally.

53.     Furthermore, pursuant to the general equitable powers of the Court, and pursuant to the bankruptcy laws, including but not limited to 11 U.S.C. §362, Plaintiff seeks recovery of his reasonable and necessary attorneys' fees, costs, and expert fees for prosecuting this action, including

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 15**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

all such fees and expenses incurred for proceedings in the District Court, the Court of Appeals, and the Supreme Court, to be assessed jointly and severally against all Defendants.

54.     Since such actions on the part of Defendants were conducted wilfully, maliciously, and intentionally, and with wanton disregard to Plaintiff's rights, Plaintiff further demands recovery of exemplary damages of and from all Defendants, jointly and severally, to the maximum extent provided by applicable law, subject to applicable limitations and standards provided by law, in an amount to be assessed by the factfinder.

## COUNT III

### Negligence *per se*

55.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 54 above, as if the same were fully set forth herein.

56.     This is a cause of action for negligence *per se* in violation of the common law of the State of Texas, which this Court has the power to enforce pursuant to the doctrine of supplemental jurisdiction as codified in 28 U.S.C.§1367.

57.     The actions of the Defendants violated several criminal statutes, including but not limited to 18 U.S.C.§873, 18 U.S.C.§1512, and §32.43 of the Texas Penal Code.  Each of such statutes was designed to prevent injury to the class of persons to which Plaintiff belongs.

58.     18 U.S.C.§873 provides in relevant part as follows:

> Whoever, under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States, demands or receives any money or other valuable thing, shall be fined under this title or imprisoned not more than one year, or both.

As alleged above, the Defendants, under a threat of informing, or as consideration for not informing various Federal agencies of alleged criminal violations of Federal Income Tax and Pension laws,

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 16**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL.complaint.wpd

demanded relinquishment of valuable legal rights and payment of approximately $1,000,000.00.

59. 18 U.S.C.§1512 provides in relevant part as follows:

(b) Whoever knowingly uses intimidation, threatens or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to–

(1) influence, delay or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to–

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

. . . .

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process

. . . .

shall be fined under this title or imprisoned not more than ten years, or both.

(c) Whoever corruptly–

. . . .

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

(d) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from–

(1) attending or testifying in an official proceeding;

. . . .

shall be fined under this title or imprisoned not more than one year, or both.

. . . .

(f) For the purposes of this section-

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 17**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint.wpd

(1)     an official proceeding need not be pending or about to be instituted at the time of the offense; and

(2)     the testimony, or the record, document, or other object need not be admissible in evidence or free of a claim of privilege.

. . . .

(k)     Whoever conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

As alleged above, Defendants threatened Archer as a party and witness, and other witnesses, with criminal prosecution if they proceed to trial in Bankruptcy Court.

60.    Furthermore, §32.43 of the Texas Penal Code prohibits commercial bribery as follows:

(a)    For purposes of this section:

(1)     "Beneficiary" means a person for whom a fiduciary is acting.

. . . .

(A)    an agent or employee;

(B)    a trustee, guardian, custodian, administrator, executor, conservator, receiver, or similar fiduciary;

(C)    a lawyer, physician, accountant, appraiser, or other professional; or

(D)    an officer, director, partner, manager, or other participant in direction of the affairs of a corporation or association.

(b)    A person who is a fiduciary commits an offense if, without the consent of his beneficiary, he intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence the conduct of the fiduciary in relation to the affairs of his beneficiary.

(c)    A person commits an offense if he offers, confers, or agrees to confer any benefit the acceptance of which is an offense under Subsection (b).

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 18**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint.wpd

(d)     An offense under this section is a state jail felony.

. . . .

In connection with the extortionist demands and blackmail by the Defendants, they attempted to influence the conduct of Richard Archer in his position as Trustee of the Archer Trust in relation to the affairs of the Trust beneficiaries and also sought to influence the conduct of David Allison, an attorney and son-in-law of Archer, who was one of the attorneys assisting Archer in the ongoing disputes with Sterquell, in relation to the affairs of his beneficiaries, namely both Archer and the Archer Trust, by illegally threatening criminal prosecution, unless the bankruptcy proceeding was dismissed and the state court judgment paid in full.

61.     Such conduct on the part of Defendants was in violation of the prohibition of such criminal statutes, and Archer and the Archer Trust were within the zone of persons designed to be protected from injury by such statutes.   As the direct and proximate result of such illegal conspiracy and such threats and intimidation, Plaintiff has been injured in his business and property in an amount exceeding one million dollars ($1,000,000.00), and has suffered additional consequential damages, for which he demands recovery from all Defendants, jointly and severally.

62.     Since such actions on the part of Defendants were conducted wilfully, maliciously, and intentionally, and with wanton disregard to Plaintiff's rights, Plaintiff further demands recovery of exemplary damages of and from all Defendants, jointly and severally, to the maximum extent provided by applicable law, subject to applicable limitations and standards provided by law, in an amount to be assessed by the factfinder.

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 19**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint.wpd

## COUNT IV

### Common Law Tort of Coercion and Distress

63.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 62 above, as if the same were fully set forth herein.

64.     This is a cause of action for acts and conduct on the part of Defendants constituting commission of the common law tort of coercion and distress.

65.     By such acts and conduct on the part of Defendants as alleged above, Defendants intentionally subjected Archer to mental suffering, emotional distress, and damage in his business and property by making serious threats with intent to extort money or pecuniary advantage against Archer.  Defendants were without privilege to do so and in fact violated ethical rules applicable to attorneys and criminal statutes, both state and federal, proscribing the conduct in question.

66.     As the direct and proximate result of such illegal conspiracy and such threats and intimidation, Plaintiff has been injured in his business and property in an amount exceeding one million dollars ($1,000,000.00), and has suffered additional consequential damages, for which he demands recovery from all Defendants, jointly and severally.

67.     Since such actions on the part of Defendants were conducted wilfully, maliciously, and intentionally, and with wanton disregard to Plaintiff's rights, Plaintiff further demands recovery of exemplary damages of and from all Defendants, jointly and severally, to the maximum extent provided by applicable law, subject to applicable limitations and standards provided by law, in an amount to be assessed by the factfinder.

## COUNT V

### Intentional Infliction of Emotional Distress

68.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 67 above, as if the same were fully set forth herein.

69.     This is a cause of action for intentional infliction of emotional distress, under the common law of the State of Texas.

70.     By such acts and course of conduct as alleged above, Defendants have sought to and actually have intentionally inflicted emotional distress upon Plaintiff.  The acts and conduct of Defendants were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The threats of criminal prosecution, both as to Plaintiff and as to his family members, in retaliation for exercising his rights under the Federal Bankruptcy Laws to seek protection from creditors as authorized by law, and for exercising his rights under Texas State law to appeal from an unfavorable decision of a trial court, constituted shocking and illegal behavior so beyond the bounds of human decency as to violate the conduct expected of members in a civilized society.  Given the provisions of federal and state criminal statues which were violated by the Defendants, and the express provisions of disciplinary rules governing the acts and conduct of attorneys, Plaintiff was entitled to expect, in a civilized society that honors and obeys the law, that he and his family would not be subjected to threats of criminal prosecution in order to extort money or pecuniary advantage from him.

71.     As the direct and proximate result of such illegal conspiracy and such threats and intimidation, Plaintiff has been injured in his business and property in an amount exceeding one

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 21**
\\Emilofe\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint.wpd

million dollars ($1,000,000.00), and has suffered severe mental anguish and emotional distress, causing him additional damages in amounts to be determined by the Jury, and additional consequential damages proximately caused by the illegal conduct of Defendants, for which he demands recovery from all Defendants, jointly and severally.

72.    Since such actions on the part of Defendants were conducted wilfully, maliciously, and intentionally, and with wanton disregard to Plaintiff's rights, Plaintiff further demands recovery of exemplary damages of and from all Defendants, jointly and severally, to the maximum extent provided by applicable law, subject to applicable limitations and standards provided by law, in an amount to be assessed by the factfinder.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Richard Archer prays that Defendants Steve Sterquell, Individually and as Trustee of the Steve W. Sterquell Profit Sharing Trust, American Housing Foundation, John H. Lovell, John T. Smithee, John O. Harris, Jr., Individually and as Executor of the Estate of Richard O. Harris, Deceased, Coleman Young, Templeton, Smithee, Hayes, Heinrich & Russell, L.L.P., and Lovell, Lovell, Newsom & Isern, L.L.P., be cited to appear and answer herein, and that upon final trial, demands that Plaintiff have judgment against Defendants, jointly and severally,  for all of his actual damages, damages for emotional distress and mental anguish, consequential damages, and exemplary damages, reasonable attorneys' fees, pre-judgment and post-judgment interest at the highest rate allowed by law, all costs of court, reasonable attorneys' fees, and general relief.

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 22**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint.wpd

Respectfully submitted,

Law Offices of
LIPPE & ASSOCIATES

By: _____

Emil Lippe, Jr.
State Bar No.: 12398300
717 N. Harwood, Suite 2350
Dallas, Texas 75201
Telephone: 214-855-1850
Fax:      214-720-6074

ATTORNEYS FOR PLAINTIFF

## JURY DEMAND

Plaintiff demands a trial by Jury on all issues properly triable by a Jury.

_____
Emil Lippe, Jr.

**ORIGINAL COMPLAINT - JURY DEMANDED - Page 23**
\\Emilofc\shareddocs\WORK\Archer\Pleadings\ORIGINAL complaint.wpd

# EXHIBIT "A"

# LOVELL, LOVELL, NEWSOM & ISERN, L.L.P.

**TRIAL ATTORNEYS**
A Limited Liability Partnership

**JOHN H. LOVELL**
Board Certified • Texas Board of Legal Specialization
Civil Trial Law
jhlovell@arn.net

**TIM D. NEWSOM**
Board Certified • Texas Board of Legal Specialization
Personal Injury Trial Law •
National Board of Trial Advocacy
Civil Trial Advocate
tnewsom@arn.net

112 West 8th Avenue, Suite 1000
Eagle Centre Building
Amarillo, Texas 79101-2314
Tel: (806) 373-1515 • Fax: (806) 379-7176
website: lovell-newsom-isern.com
email: llni@arn.net

**WENDY A. HUMPHREY**
Associate
Also Licensed in New Mexico
whumphrey@arn.net

**JOE L. LOVELL**
Board Certified • Texas Board of Legal Specialization
Civil Trial Law • Personal Injury Trial Law
jllovell@arn.net

**KEVIN A. ISERN**
Board Certified • Texas Board of Legal Specialization
Personal Injury Trial Law •
National Board of Trial Advocacy
Civil Trial Advocate
kisern@arn.net

April 4, 2003

Mr. Don Sunderland                                                      *Via Facsimile*
MULLIN, HOARD & BROWN, L.L.P.
800 Amarillo National's Plaza Two
P.O. Box 31656
Amarillo, Texas 79120-1656

Re:    *Sterquell v. Archer, et al.*, Cause No. 40,125-A, in the 47th District Court in and for Randall County, Texas; *In re: Richard Keys Archer*, Cause No. 02-21164-RLJ-7, in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division

Dear Don:

After our settlement meeting on the morning of Friday, April 4, Cole and I conferred with Mr. Sterquell regarding a settlement offer.

Plaintiffs in Sterquell v. Archer offer a settlement on the following terms:

1.    Payment in full, with interest and costs, of the Sterquell v. Archer judgement. The appeal will be dismissed upon payment.

2.    Payment of $50,000 to American Housing Foundation for the attorney's fees and expenses it has incurred in the Archer related litigation.

3.    Dismissal with prejudice of all adversary proceedings, the bill of review action in state district court, the Witchita Falls case, and Sterquell and Harris' objections to exemptions in the bankruptcy.

Mr. Don Sunderland
April 4, 2003
Page 2

4.  Steve Sterquell, Richard Harris and their affiliated persons and entities will generally release R. Richard Archer, his family members, and the "Archer Entities."

5.  Richard Archer, his family, and the "Archer Entities" will generally release Steve Sterquell, Richard Harris and their affiliated entities and persons.

6.  All produced documents and copies thereof will be returned to the producing party. All notes, tables, indexes, etc., (including work product) will be destroyed.

7.  Sterquell and Harris will agree to support the dismissal of the In re Richard Archer bankruptcy case.

Sincerely,

John H. Lovell

JHL/edl

xc:   Cole Young
      Steve Sterquell

# EXHIBIT "B"

LAW OFFICES
## TEMPLETON SMITHEE HAYES HEINRICH & RUSSELL, L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
320 SOUTH POLK, SUITE 1000 - L.B. 5
AMARILLO, TEXAS 79101
TELEPHONE (806) 324-0324
TELECOPIER (806) 379-8568
E-MAIL: THEFIRM@800OURFIRM.COM

ROBERT L. TEMPLETON, P.C. * **
JOHN T. SMITHEE * ***
JOE W. HAYES
BRIAN P. HEINRICH**
DAVID M. RUSSELL* **

OF COUNSEL:
COLEMAN YOUNG
OSCAR P. FIELDS, P.C.

INVESTIGATOR:
JAMES W. LAFAVERS

BOARD CERTIFIED BY THE
TEXAS BOARD OF LEGAL SPECIALIZATION

* CIVIL TRIAL LAW
** PERSONAL INJURY TRIAL LAW
*** CIVIL APPELLATE LAW

April 15, 2003
**VIA TELECOPY**

Mr. Jeff Voiles
MULLIN, HOARD & BROWN, L.L.P.
P.O. Box 31656
Amarillo, Texas   79120-1656

Re:   <u>Richard Keys Archer</u>, Debtor, United States Bankruptcy Court, Northern District of
Texas, Amarillo Division

Dear Jeff:

Please find enclosed the "Letter of Intent" which has been fully executed. As you know, we will need the bankruptcy court approval of any comprehensive agreement. Therefore, to the extent the "Letter of Intent" makes reference to actions which are to occur upon "execution" of the Comprehensive Agreement, we actually anticipate that the Comprehensive Agreement will include a provision for a "closing" sometime after bankruptcy court approval. At that "closing," monies will be exchanged, documents will be turned over. and the privilege log and certificates due will be delivered, etc. If this is not agreeable, please contact me as soon as possible

Thank you for your consideration.

Yours very truly,

Coleman Young

CCY/tna

# MULLIN HOARD & BROWN, L.L.P.

DAVID MULLIN
STEVEN L. HOARD
JOHN M. BROWN
DAVID R. LANGSTON
DONALD M. HUNT
JEFFREY E. RITTER
DON D. SUNDERLAND
JOHN S. IRWIN
LATRELLE BRIGHT JOY
CHARLES R. WATSON, JR
JONATHAN S. MILLER
JOHNNY K. MERRITT
JOEL R. HOGUE
JOHN G. TURNER III
VINCENT E. NOWAK
ROBERT R. BELL
T. KEVIN NELSON
MICHAEL D. HICKS
WOLF PUCKETT
BRAD A. CHAPMAN
MARK S. LOGSDON

ATTORNEYS AT LAW
500 SOUTH TAYLOR, LB #213
SUITE 800
AMARILLO, TEXAS 79101
(806) 372-5050
FAX (806) 372-5086

MAILING ADDRESS:
P.O. BOX 31656
AMARILLO, TEXAS 79120-1656

www.mullinhoard.com

E-MAIL ADDRESS: dsunderl@mhba.com
DIRECT DIAL: (806) 337-1117

*SPECIAL COUNS*
WARLICK CA
JOHN MOZOLA, I
JIMMY L. RC
JEFFREY C VOIL

LISA L. HAU
WALTER T. PRICE,
DAVID A. KELLY,
CLINT R. LATHA
DARRELL J. GUTHR
LAWRENCE M. DO
MICHAEL P. SPRING
JANA G. CLI
MICHAEL B. FRANKL
MARK W. McBRAYS
BRAD D. McCA
JONI K. PAI
M. ANDREW STEWAI

April 15, 2003

**By Facsimile No. 379-7176**

John H. Lovell
Lovell Lovell Newsom & Isern
112 W. 8th, Suite 1000
Amarillo, TX 79101

     Re:    Letter of Intent with regard to settling existing disputes between Steve Sterquell, *et al.* and Richard Archer, *et al.*

Dear John:

    This "Letter of Intent" is intended to memorialize our April 8, 2003 discussions, in which we discussed a framework for the payment for settlement of the claims made by your clients (*i.e.* Steve Sterquell and Richard Harris, individually and as trustees of their respective profit sharing plans, and American Housing Foundation) against Richard K. Archer, individually and as trustee of the Richard K. Archer, M.D., P.A. Profit Sharing Plan, and Reba Land, Inc. My client requests that both Steve Sterquell (individually and in his representative capacity) and an authorized representative of Richard Harris sign this letter before we endeavor to negotiate and memorialize a comprehensive agreement.

    As you will recall, in our meeting, I specifically indicated that Dr. Archer has not authorized us to offer, nor to otherwise discuss, the amount of money he might be willing to pay your clients. Rather, our objective was to convey the message that there are some essential terms and obligations that your clients and their representatives must be willing to accept and assume in connection with any payment by Richard K. Archer. Simply put, if your clients cannot accept and agree to abide by these terms and obligations, then no agreement can be reached, regardless of the amount of money involved. The purpose of this Letter of Intent is to evidence your clients' preliminary agreement to these required terms and conditions as set forth below.

John H. Lovell
April 15, 2003
Page 2

For purposes of interpretation of the terms and conditions discussed below, which we ask be accepted and acknowledged by your clients, the following terms shall have the following meanings:

(a)     "RKA" means Richard K. Archer, individually and as trustee of the Richard K. Archer, M.D., P.A. Profit Sharing Plan;

(b)     "Archer Entities" means RKA, Ruth Archer, RKA's children and the spouses of RKA's children, any entity in which RKA, Ruth Archer or either of them either have or have had an interest, and any entity in which RKA's children and/or spouses of RKA's children either have or have had an interest;

(c)     "Sterquell" means Steve W. Sterquell, individually and as trustee of the Steve W. Sterquell Profit Sharing Trust;

(d)     "Harris" means Richard O. Harris, individually and as trustee of the Richard O. Harris Profit Sharing Trust, and any personal representative, guardian or guardian ad litem of or for Richard O. Harris; and

(e)     "AHF" means American Housing Foundation.

As a preliminary step to an agreement concerning the amount of money required to be paid by RKA, we ask that you and your clients, as well as AHF, acknowledge that:

1.     In exchange for RKA's payment of a mutually-agreeable amount of money, RKA's release, pursuant to the terms of a comprehensive agreement to be negotiated by the parties, of his causes of action against Sterquell, Harris and AHF, and other mutually agreeable terms, Sterquell, Harris, AHF all of their representatives (including, without limitation, your and Cole's respective law firms and any other law or accounting firms that have represented Sterquell, Harris or AHF in the involved disputes) will agree in writing that the terms of any agreement will be kept absolutely confidential.  Specifically, but not by way of limitation, your clients and their representatives agree that they will not report, inform nor otherwise transmit information concerning (i) the nature or extent of the financial affairs of, or (ii) alleged violations of any law of the United States by, RKA or any of the Archer Entities to the U.S. Department of Justice, the Internal Revenue Service, the U.S. Department of the Treasury, the U.S. Department of Labor, the U.S. Trustee for U.S. Bankruptcy Court for the Northern District of Texas, the U.S. Bankruptcy Court for the Northern District of Texas, or any other branch or agency of local, state or federal government.  Notwithstanding the foregoing, nothing contained herein should be construed as an admission that RKA or any of the Archer Entities have in any manner violated any provision of state or federal law, and RKA and the Archer Entities expressly deny that any

John H. Lovell
April 15, 2003
Page 3

such violations of state or federal law have occurred, or are continuing. Additionally, notwithstanding the foregoing, it shall not be a breach of this covenant of confidentiality for a party bound by this covenant to respond to formal discovery requests served by the U.S. Department of Justice, the Internal Revenue Service, the U.S. Department of the Treasury or the U.S. Department of Labor, if responses to such discovery requests are compelled by a validly-issued subpoena, unless such inquiry was precipitated in whole or in part, directly or indirectly, by the making of a report, the providing of information or the making of a representation or disclosure by a party bound by this covenant of confidentiality in violation of its terms. In the event a party to this covenant of confidentiality receives a discovery request and subpoena from one of the above-listed governmental agencies, such party shall immediately provide RKA with a copy of such discovery request and subpoena. Likewise, subject to the limitation set forth below, it shall not be a breach of this covenant of confidentiality for a party bound by this covenant to respond to formal interrogatories, deposition questions or other discovery requests posed to them in a court proceeding, provided such response is compelled by court order. In the event that a party bound by this covenant of confidentiality is requested to respond to formal interrogatories, deposition questions or other discovery requests served in a court proceeding, and if the required responses to such discovery requests would otherwise violate the terms of this covenant of confidentiality, the party upon whom such discovery requests are served shall immediately: (i) file with the court a formal objection to making such responses for the reason that a response would result in violation of this covenant of confidentiality; and (ii) notify RKA of the service of such discovery requests at a time and in a manner sufficient to enable RKA to timely appear and file a formal objection to such discovery requests. If, following a hearing upon the objections of RKA and/or the party upon whom such discovery requests have been served, a court of competent jurisdiction enters an order compelling responses to the discovery requests, the party upon whom such discovery requests were served may then respond to them without having violated this covenant of confidentiality; provided, however, that regardless of whether a party to this covenant of confidentiality is compelled by court order to respond to such discovery requests, if such discovery requests were precipitated in whole or in part, directly or indirectly, by the responding party's making of a report, providing information or otherwise making representations or disclosures in violation of the terms of this covenant of confidentiality, the responding party shall be considered to have breached this covenant of confidentiality.

2.      In exchange for RKA's payment of a mutually-agreeable amount of money, RKA's release, pursuant to the terms of a comprehensive agreement to be negotiated by the parties, of his causes of action against Sterquell, Harris and AHF, and other mutually agreeable terms, Sterquell, Harris, AHF and all of their representatives (including, without limitation, your and Cole's respective law firms and any other law or accounting firms that have represented Sterquell, Harris and AHF in the involved disputes) will deliver to RKA, simultaneously with the execution of the comprehensive agreement, any and all documents (other than documents falling within the scope of the attorney work-product exemption or the attorney client privilege) and other information in their possession pertaining to RKA and any of the Archer Entities. The documents and information to be so delivered will include not only documents obtained through formal discovery in any prior or existing litigation between your clients, RKA and any of the

John H. Lovell
April 15, 2003
Page 4

Archer Entities (including, without limitation, RKA's bankruptcy proceeding), but also documents and information obtained by your clients or their representatives through independent investigation or prior professional representation of RKA and/or any of the Archer Entities, including, without limitation, notes, charts, memoranda, correspondence and work-papers. With regard to those documents which would otherwise be subject to delivery to RKA pursuant to this paragraph, but which fall within the scope of the attorney work-product exemption or the attorney client privilege, Sterquell, Harris, AHF and their representatives (including, without limitation, your and Cole's respective law firms and any other law or accounting firms that have represented Sterquell, Harris and AHF in the involved disputes) shall deliver all of such documents to Cole Young, who shall be responsible for: (i) preparing a "privilege log" identifying such documents by date, subject matter, identity of preparer and recipient and nature of privilege or exemption claimed; (ii) delivering such "privilege log" to RKA simultaneously with delivery of the non-privileged documents; (iii) destroying the documents and records identified in the "privilege log;" and (iv) certifying, in writing, to counsel for RKA that all such allegedly privileged or exempted documents have been duly destroyed. In addition to the above-referenced turnover and destruction of physical documents, Sterquell, Harris, AHF and their representatives (including, without limitation, your and Cole's respective law firms and any other law or accounting firms that have represented Sterquell, Harris and AHF in the involved disputes) will delete and purge from their computers, and destroy any back-up electronic media pertaining to, all computer-stored notes, work papers and other records relating or pertaining in any way to any dispute or litigation between RKA or any Archer Entity and Sterquell, Harris and AHF. Your and Cole's respective law firms and any other law or accounting firms that have represented or otherwise acted on behalf of Sterquell, Harris or AHF in connection with any dispute with RKA or any of the Archer Entities will furnish RKA with a letter (i) instructing Sterquell, Harris and AHF to comply with this obligation of production, delivery and destruction, and purgation and (ii) authorizing and instructing other involved law or accounting firms to produce the specified non-privileged documents to RKA and instructing them that no copies of the produced documents are to be retained. The intent and purpose of this requirement is that, following execution of the comprehensive agreement, neither Sterquell, Harris, AHF, nor their representatives, shall retain in their possession any physical documents, computer records or other information pertaining or relating to the financial affairs of RKA or the Archer Entities. The physical documents to be produced to RKA pursuant to this paragraph 2 shall be retained by Mullin, Hoard & Brown for a period of five (5) years from the date of their production.

Dr. Archer has authorized us to engage in negotiations designed to resolve all pending claims by your clients, assuming your clients acknowledge that any comprehensive agreement will at a minimum include terms substantially similar to the foregoing, and assuming your clients make the following present representations --

- first, none of the prohibited disclosures set forth in paragraph 1 above have been made as of the execution of this Letter of Intent, and

John H. Lovell
April 15, 2003
Page 5

- second, none of the prohibited disclosures set forth in paragraph 1 above will be made following execution of this Letter of Intent while the parties negotiate a comprehensive agreement.

If this is acceptable to you and your clients, please sign and return to me this letter after it is signed as set forth below. At that point, we will make to you a counter to this written offer you delivered to me by facsimile on April 4, 2003.

We believe that both RKA and your clients are interested in pursuing negotiations in earnest, and with a view toward finally resolving the claims by your clients. To that end, this Letter of Intent, including the covenant of confidentiality set forth above, will remain in force until 5:00 p.m. on April 25, 2003. If the material terms of a comprehensive agreement have been reached by that time, the terms of this Letter of Intent, including the covenant of confidentiality, will be incorporated into the comprehensive agreement. If the material terms of a comprehensive agreement have not been agreed upon by that time, this Letter of Intent shall thereupon terminate and the covenant of confidentiality contained herein shall be of no further force and effect; provided, however, that the parties may then mutually to continue the covenant of confidentiality in force beyond 5:00 p.m. on April 25, 2003, if they deem such an extension appropriate to enable them to continue to negotiate the terms of a comprehensive agreement. During the period from the date of execution of this Letter of Intent through and including April 25, 2003, RKA, Sterquell and Harris shall take no action (with the exception of legal research and investigation by their respective counsel) to alter their respective legal positions *vis a vis* one another, it being the intention of RKA, Sterquell and Harris that their attention should be focused during such period upon negotiating a comprehensive agreement without concern that their respective legal positions regarding the claims asserted between them may be adversely affected by conduct of an opposing party.

Your signature and that of Cole's, in the space provided below constitutes your agreement to be bound by the terms of this letter.

Thank you for your prompt attention to this matter.

Very truly yours,

Don D. Sunderland

cc:    Cole Young
       Richard A. Archer, M.D.
       David Allison

04/15/03 14:08 FAX 806 379 6568        TEMPLETON SMITHEE                    SEC CORP FIN SERVICES        PAGE 02/8
04/15/03 TUE 12:00 FAX 806 378 7176        LOVELL, LOVELL ⊕ NEWSOM                                        ☑ 007
                                                                                                         ☑ 00:

04-15-08   08:09   From-MULLIN HOARD AND BROWN                              T-122  P.07/07  F-620

John H. Lovell
April 15, 2003
Page 6

**Agreed and Acknowledged:**

Steve Sterquell, individually and as a representative
of Steve Sterquell's pension/retirement plan
or plans (in whatever form), and of any other entity
in which Steve Sterquell, his plan(s), or entities have
an interest (in whatever form) have any interest.

Richard O. Harris, by _____, his
authorized representative, both individually and as
a representative of Richard Harris' pension/retirement plan
or plans (in whatever form) and any other entity in which
Richard Harris, his plan(s), or entities have any interest


American Housing Foundation


By: _____

    Its _____


Lovell Lovell Newsom & Isern, LLP

John H. Lovell
Attorney for Steve Sterquell and Richard Harris


Templeton Smithee Hayes Heinrich & Russell, L.L.P.

Coleman Young
Attorney for Steve Sterquell and Richard Harris

Approved as to content:

Don D. Sunderland
Attorney for Richard K. Archer

J:\64657\00\150\...

04/15/2003 12:28 FAX 806 372 7508          AMERICAN HOUSING FUND
                                          TEMPLETON SMITHEE                    007/007

04-15-03   09:12   From-MULLIN HOARD AND BROWN                    T-123   P.07/07   F-320

John H. Lovell
April 15, 2003
Page 6

Agreed and Acknowledged:

_____
Steve Sterquell, individually and as a representative
of Steve Sterquell's pension/retirement plan
or plans (in whatever form), and of any other entity
in which Steve Sterquell, his plan(s), or entities have
an interest (in whatever form) have any interest.

Richard O. Harris, by _____, his
authorized representative, both individually and as
representative of Richard Harris' pension/retirement plan
or plans (in whatever form) and any other entity in which
Richard Harris, his plan(s), or entities have any interest

**American Housing Foundation**

By _____
Its  Executive Director

**Lovell Lovell Newsom & Isern, LLP**

_____
John H. Lovell
Attorneys for Steve Sterquell and Richard Harris

**Templeton Smithee Hayes Heinrich & Russell, LLP**

_____
Coleman Young
Attorney for Steve Sterquell and Richard Harris

Approved as to Content:

_____
Don D. Sunderland
Attorney for Richard K. Archer

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET 2-05CV-078-J

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM)

## I. (a) PLAINTIFFS

Richard K. Archer, M.D., Individually and as Trustee of the Richard K. Archer, M.D., P.A., Profit Sharing Plan & Trust

**DEFENDANTS**

"(see attachment)"

**(b)** County of Residence of First Listed Plaintiff _____Randall County_____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____Potter County_____
(IN U S PLAINTIFF CASES ONLY)
NOTE.  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Emil Lippe, Jr., Lippe & Associates, 717 N. Harwood, Suite 2350, Dallas, Texas 75201; Tel. 214-855-1850

Attorneys (If Known)

N/A.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U S Government Not a Party)
- ☐ 2  U S Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret Inc Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U S Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)

Brief description of cause: 42 U.S.C. Sec. 1985; conspiracy to deter attendance at trial.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F R C P. 23

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE _____ DOCKET NUMBER _____

DATE 3/8/05

SIGNATURE OF ATTORNEY OF RECORD  *Emil Lippe, Jr.*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____

## DEFENDANTS

Steve Sterquell, Individually and as Trustee of the Steve W. Sterquell Profit Sharing Trust

American Housing Foundation

John H. Lovell

Richard O. Harris, Jr., Individually and as Executor of Richard O. Harris, Deceased

Coleman Young

John Smithee

Templeton, Smithee, Hayes, Heinrich & Russell, L.L.P.

Lovell, Lovell, Newsom & Isern, L.L.P.